# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

JASON W. WALLER,

                Petitioner,            :    Case No. 3:15-cv-310

     - vs -                        District Judge Thomas M. Rose
                                           Magistrate Judge Michael R. Merz

TERRY TIBBALS, WARDEN,
London Correctional Institution,

                                  :

                Respondent.

---

# REPORT AND RECOMMENDATIONS

---

       This habeas corpus case, brought *pro se* by Petitioner Jason W. Waller, is before the

Court for decision on the merits on the Petition (ECF No. 1), the Amended Petition (ECF No. 5),

the State Court Record (ECF No. 17), the Return of Writ (ECF No. 18), and the Reply (ECF No.

21).

       Petitioner's grounds for relief as pled in the first Amended Petitions are:

       **GROUND ONE:** The jury instruction [sic] were improper depriving appellant of his right to process and a fair trial

       **Supporting Facts:**

              A. The trial court was required to instruct the jury for the inferior offense of aggravated assault and failure to do so constitutes plain error.

              B. The trial court erred in refusing to instruct the jury on self-defense.

1

1. Appellant was entitled to Castle Doctrine instruction and presumption

2. Appellant was entitled to a self-defense instruction

3. Appellant was entitled to an instruction for reckless homicide

**GROUND TWO:** The denial of Waller's motion to dismiss the indictment was an error because the indictment contained structural errors which were not remedied by the bill of particulars.

**Supporting Facts:**

A. Appellant's indictment must be dismissed because it failed to state all of the elements of the offense of felony murder.

B. The Bill of Particulars did not remedy this because it alleged two theories of felonious assault, failing to put Appellant on notice of the elements of the offense for which he was charged.

**GROUND THREE:** The Prosecutor engaged in misconduct throughout the entire trial, tainting the whole proceedings, depriving appellant of a fair trial.

**Supporting Facts:** …throughout the entire trial, tainting the whole proceedings, depriving appellant of a fair trial.

**GROUND FOUR:** Ineffective assistance of trial counsel.

**Supporting Facts:** The petitioner states that his attorney did not come enough times and spend enough time in helping to prepare him for trial in violation of his six [sic] amendment right to effective assistance of counsel guaranteed by the United States Constitution. His attorney only spent seven days about 45 minutes each time, and the Saturday and Sunday the weekend before he was to start the trial the attorney was to come and see him and go over what was to be said at trial and never showed.

**GROUND FIVE:** Ineffective assistance of trial counsel.

**Supporting Facts:** The petitioner was denied effective assistance of counsel guaranteed by the United States Constitution because of

his counsel never asked the petitioner did he have any character witnesses, something that would prove his character for meekness, peacefulness, and accommodating character and how he try [sic] to talk his way out of situations peacefully. How he the petitioner likes to help people when he can. How petitioner would not stab an unarmed person without just cause.

**GROUND SIX:** Ineffective assistance of trial counsel.

**Supporting Facts:** The petitioner was denied effective assistance of counsel guaranteed by the United States Constitution because of his counsel['s] stipulation to the prosecutor's motion in limine not to allow deceased['s] violent past to be brought up when specific acts would be helpful petitioner state of mind and impeachment of state's key witnesses. [sic]

**GROUND SEVEN:** Ineffective assistance of trial counsel.

**Supporting Facts:** The petitioner was denied effective assistance of counsel guarantee[d] by the United States Constitution because of his counsel['s] failure to properly challenge state's key witnesses inconsistent statements and testimony and fabrication of evidence.

**GROUND EIGHT:** Ineffective assistance of trial counsel.

**Supporting Facts:** The petitioner was denied effective assistance of counsel guaranteed by the United States Constitution because of his counsel['s] failure to properly bring out the evidence to show self-defense and properly argue it so that it would warrant an instruction for self-defense. It was the petitioner's property he was trying to get back peacefully he had given the deceased a three day noticed [sic] on the phone and waited two to three weeks to give him a chance to clam [sic] down before going to the house to give him a written notice pursuant to Ohio Revised Code 1923.04. Counsel failed to bring out that in Ohio there is no duty to retreat when one's intent is not to use deadly force once the decease [sic] picked up the stone/rock with the distant [sic] they were from each other there was no reasonable means of escape running or backing away was not an option because a stone/boulder/rock can cause serious physical harm and death in a hand or thrown. the decease [sic] could have easily chased him down, with a careful look at the crime scene drawing and pictures you could see that.

(Amended Petition, ECF No. 5, PageID 30, et seq.)

On January 20, 2016, the Court granted Waller leave to amend to add the following

claims:

> **Ground Nine:**  Ineffective Assistance of Trial Counsel in violation of the 6th Amendment of the U.S. Constitution for failure to object to the trial court's erroneous jury instruction.
>
> **Supporting Facts:**  During the stage for instructing jurors on which violation of the requisite statutes to convict or acquit petitioner, the instruction involving voluntary manslaughter's predicate offense of aggravated assault was omitted by the Court. Wherein trial counsel failed to timely object to this erroneous instruction, denying the petitioner constitutionally effective assistance.
>
> **Ground Ten:**  Ineffective assistance of counsel for failure to file motion to dismiss for due process violation of speedy trial right guaranteed by the 6th and 14th Amendment[s] of the U.S. Constitution.
>
> **Supporting Facts:**  Trial counsel's performance fell below the objective standard of reasonableness when, upon request, counsel failed to file an motion to dismiss based on the fact that the petitioner was not afforded a preliminary hearing within the specified statutory time requirement under Ohio law; violating his due process and equal protection right protected by the 6th and 14th Amendment of the U.S. Constitution.
>
> **Ground Eleven:**  Trial court's abuse of discretion for failure to instruct jury on self-defense in violation of Due Process Clause of the 14th Amendment of the U.S. Constitution.
>
> **Supporting Facts:**  During the course of the trial proceedings the petitioner requested the trial court instruct the jury on self-defense. Sufficient evidence, on the record, was presented to warrant such instruction. Moreover, the evidence sufficed the three prongs required to receive the aforementioned instruction, however, the trial court arbitrarily refused to instruct jury.

(Motion to Amend, ECF No. 15, PageID 98-100.)

4

**Procedural and Factual History**

On April 23, 2012, the Clark County Grand Jury indicted Waller on one count of purposeful murder with firearm specifications in violation of Ohio Revised Code § 2903.02(A); one count of felony murder with firearm specification in violation of Ohio Revised Code § 2903.02(B); one count of tampering with evidence in violation of Ohio Revised Code § 2921.12(A)(1); and one count of carrying a concealed weapon in violation of Ohio Revised Code § 2923.12(A).

Prior to trial, Waller, through counsel, filed motions to suppress statements and photo identification which were denied (State Court Record, ECF No. 17, PageID No. 122). In addition, Waller changed his plea to Not Guilty by Reason of Insanity and Suggestion of Incompetency to Stand Trial which the court later permitted him to withdraw. *Id*. at 129. Waller proceeded to file a motion to dismiss count two of the indictment, felony murder, since it was defective because of the failure to specify the lesser included offense of felonious assault. Following a hearing on the matter, the trial court denied the motion.

Waller was tried by a jury and found not guilty of purposeful murder and guilty of felony murder without a firearm, tampering with evidence, and one count of carrying a concealed weapon. *Id*. at 134. On February 12, 2013, Waller was sentenced to an aggregate term of fifteen years to life with sentences to be served concurrently. *Id*. at 138.

Waller, through counsel, appealed to the Court of Appeals of Ohio, Second Appellate District, Clark County, raising the following assignments of error:

        I.      The Jury Instructions were improper, depriving appellant of his rights to due process and a fair trial.

    A. The trial court was required to instruct the jury for the inferior offense of aggravated assault and failure to do so constitutes plain error.

    B. The trial court erred in refusing to instruct the jury on self-defense.

1. Appellant was entitled to the Castle Doctrine instruction and presumption.

2. Appellant was entitled to a self-defense instruction

    C. Appellant was entitled to an instruction to reckless homicide.

II. The denial of Waller's Motion to Dismiss the Indictment was an error because the indictment contained structural errors which were not remedied by the Bill of Particulars.

    A. Appellant's indictment must be dismissed because it failed to state all of the elements of the offense of felony murder.

    B. The Bill of Particulars did not remedy this because it alleged two theories of felonious assault, failing to put Appellant on notice of the elements of the offense for which he was charged.

III. The prosecutor engaged in misconduct throughout the entire trial, tainting the whole proceedings, depriving appellant of a fair trial.

(State Court Record, ECF No. 17, PageID No. 151.)

The Second District set forth the facts of this case on direct appeal as follows:

[*P4] Waller purchased the house at 154 Kewbury, in Springfield, in 2006. He was employed as a radiographer at Mercy Medical Center, and later worked a second job with a Dr. Dahdah. In September 2010, as a result of cutbacks in Medicare, Waller lost his job at the hospital, and his job with Dr. Dahdah became part-time.

[*P5] Waller could not make ends meet. He fell into arrears in his mortgage payments. He moved in with his parents in Florida,

6

hoping to make a new start there, but could not find work there, either. In June 2011, he returned to 154 Kewbury, in Springfield, with Julie Ferryman, whom he would marry on February 14, 2012.

[*P6]  A former patient of Waller's, named Doss Smith, needed home health care after the death of his wife. He offered Waller and Julie, a licensed practical nurse, the opportunity to come live with him, if they would take care of him. There was no formal contract, but Waller and his wife moved in with Smith on February 28, 2012. At that time, Waller had been in arrears on his mortgage for a "long time." The bank had not begun foreclosure proceedings, but Waller anticipated that it would do so.

[*P7]  Waller had several friends help him move. One of these was Donny Argabright, the victim in this case. Argabright had his own housing problems. He was living with his girlfriend, Stacy Young, but he and his pit bull dog had been banned from the premises, so he was reduced to sneaking in and out. Waller agreed to let Argabright live at 154 Kewbury:

> There was no rent. There was no contract. I told him specifically, you know, the bank could foreclose in four weeks, you know, six weeks; or I might need it back for emergency. And he said, "Well, that's fine." He said he didn't have any problems about it. At that time he agreed. He said, "Well, I'll just move out." And that's what we agreed with.

[*P8]  Waller and Julie moved in with Smith; Argabright moved into 154 Kewbury. Waller would occasionally go to 154 Kewbury to pick up his mail, which included medications mailed to him by the Veterans Administration.

[*P9]  Waller and his wife ran into problems living with Doss Smith. Smith was abusing his medications, resulting in more than one hospitalization. Things came to a head when medics asked where Smith's medications were, and Waller told them they were in Smith's safe. After a telephone conversation with Smith's son, Waller concluded he and his wife could no longer stay at Smith's house. This was in the beginning of April 2012.

[*P10]  Even before this, in mid-March, Waller had talked to Argabright about returning to 154 Kewbury to live. In the first phone conversation on this subject, Argabright initially agreed, after some discussion, that he would move out. But Argabright called Waller back five minutes later, furious, threatening to kill

Waller if he even came over to 154 Kewbury. Waller decided to give Argabright some time to cool down.

[*P11]  Waller and his wife explored various temporary housing possibilities, finally moving into a motel room. This was about April 3, 2012. Waller's unemployment compensation had ended in March.

[*P12]  On Monday, April 9, 2012, around 7:00 p.m., Waller drove to 154 Kewbury for his fateful confrontation with Argabright. Before leaving, he armed himself with a Derringer pistol, with four bullets, and a bladed weapon with a blade ten to twelve inches long and one inch wide, and a hilt. The State referred to the bladed weapon, which was never recovered, as a sword; Waller referred to it as a knife. We will adopt Waller's name for the weapon. Both the Derringer and the knife had been given to Waller by Doss Smith. Waller testified that his purpose in going to 154 Kewbury was to regain possession of his house, and to get his mail, including his medications, which were running low.

[*P13]  Waller parked on the street, near the house, and walked to the door. From this point, the State's version of events and Waller's version begin to diverge. According to Waller, he opened the screen door (the inner door being at least partially open), in order to see if Argabright was there so he could talk to Argabright. According to Stacy Young, who was inside with Argabright, Waller was trying to get inside. In any event, Argabright blocked Waller's entry into the home.

[*P14]  According to Young, Argabright was being conciliatory on the subject of his occupancy of 154 Kewbury, telling Waller, "Look, man, we're almost out of here. We just don't want any trouble." Waller was being provocative, challenging Argabright to "come outside and we'll settle this." At some point during this conversation in the doorway, Waller asked if he could at least get his mail, and Young got Waller's mail and handed it to him.

[*P15]  Argabright eventually took his coat off (he was not wearing anything else above his waist), and stepped outside. Both parties agree that Waller took the first swing. Waller testified that he failed to connect. Young testified that Waller connected with this swing, and with another, both times causing Argabright to stumble so that he had to use his arm to keep from falling all the way to the ground.

[*P16]  Both parties agree that Argabright picked up a rock. Both

parties agree that Waller pulled out his knife, which he had put in his boot. Either before Waller drew his knife, or as he was doing so, he threw the mail, including the mail containing his medications from the VA, onto the yard.

[*P17] According to the State's witnesses, Argabright dropped the rock when Waller first approached him with the knife. According to Waller, Argabright did not drop the rock until he was stabbed with the knife.

[*P18] After some movements on the driveway, in the vicinity of a vehicle parked there, Argabright wound up facing Waller, with Argabright's back to the garage door. Young testified that Argabright had been trying unsuccessfully to open the garage door, which did not have a handle, and then turned so that he was facing Waller. She testified that Waller lunged and stabbed Argabright in the chest with the knife.

[*P19] Waller testified that he was facing Argabright on the driveway, and that Argabright still had a rock in his hands above his head. Waller testified that he and Argabright approached each other:

> He was coming at me and with the rock above his head and he stepped out for me forward and I stepped forward; and I took the knife and I put it out and stabbed him, ran into him with it. And the rock, his rock flew to the right and landed to the right side, landed about four feet to the right 'cause he was coming at force at me, and I came at force with him and collided.

[*P20] Waller's knife penetrated six inches into Argabright's chest, entering Argabright's heart and lungs and injuring his aorta and pulmonary artery, killing him.

….

*State v. Waller,* 2014-Ohio-237, 2014 Ohio App. LEXIS 217 (2nd Dist. Jan. 24, 2014), appellate jurisdiction declined, 140 Ohio St. 3d 1415 (2014). The Second District affirmed the conviction. *Id.*

On October 22, 2013, Waller filed a Petition to Vacate under Ohio Revised Code § 2953.21, asserting ineffective assistance of counsel (State Court Record, ECF No. 17, PageID

355, et seq.).  Waller also filed a motion for an evidentiary hearing.  Following briefing, Waller filed an amended petition adding two additional two grounds of ineffective assistance of counsel. On November 26, 2014, Waller filed a motion for leave for a new trial based on newly discovered evidence (*Id.* at PageID 425).   On June 2, 2015, the trial court denied Waller's post-conviction petition and motion for new trial. (State Court Record, ECF No. 17, PageID No. 432). Waller did not appeal this decision.

On April 23, 2014, Waller filed an application for reopening his appeal pursuant to Ohio App. R. 26(B) asserting ineffective assistance of appellate counsel. *Id.* at PageID 437 *et seq*. The Second District denied that application on June 4, 2014. (State Court Record, ECF No. 17, PageID No. 466). Waller did not appeal to the Ohio Supreme Court

# ANALYSIS

**Ground One:  Improper Jury Instructions**

In his First Ground for Relief, Waller claims the jury instructions were erroneous in four respects:  (1) failure to instruct on the inferior offense of aggravated assault; failure to instruct on the Castle Doctrine and presumption; (3) failure to instruct on self-defense; and (4) failure to instruct on reckless homicide.  These four sub-claims will be dealt with *seriatim.*

**Aggravated Assault Instruction**

Waller argues he was entitled to have the jury instructed on aggravated assault.  He raised

this as his first assignment of error on direct appeal and the Second District decided the claim as follows:

**[\*P30]** Waller's First Assignment of Error is as follows:

THE JURY INSTRUCTIONS WERE IMPROPER, DEPRIVING APPELLANT OF HIS RIGHTS TO DUE PROCESS AND A FAIR TRIAL.

**[\*P31]** Waller first contends that the trial court's failure to have instructed the jury concerning the lesser offense of Aggravated Assault constitutes plain error. The trial court did instruct the jury, with respect to each of the Murder counts, that if it should find that the State had proven beyond reasonable doubt all of the elements of the offense, but that Waller had proven by the greater weight of the evidence that he knowingly acted while under the influence of sudden passion or in a sudden fit of rage, either of which was brought on by serious provocation occasioned by the victim that was reasonably sufficient to incite Waller into using deadly force, then it must find Waller guilty of Voluntary Manslaughter. This was a proper instruction with regard to the count of Purposeful Murder, but Waller contends, and we agree, that it was not a proper instruction with regard to the count of Felony Murder.

**[\*P32]** Waller was charged, in the second count, with having committed Felonious Assault, proximately resulting in Argabright's death. Had the jury been correctly instructed as to this count, then, if it should have found that the State met its burden of proof as to the elements, but that Waller had succeeded in proving, by a preponderance, that he acted under the sudden influence of passion or in a sudden rage, etc., it could not have found that Waller committed Felonious Assault, the predicate for the Felony Murder count. Waller would instead have committed Aggravated Assault, which cannot be a predicate for Felony Murder, but which can be a predicate for Involuntary Manslaughter. R.C. 2903.04(A).

**[\*P33]** The trial court gave the parties an opportunity to object to its proposed jury instructions. Although Waller had other objections to the instructions, he did not object to that part of the jury instructions, as to the Felony Murder count, concerning the lesser offense of Voluntary Manslaughter. Therefore, as Waller acknowledges, this error is governed by the plain-error standard of appellate review.

11

[*P34] Waller cites *State v. Warner*, 11th Dist. Portage No. 2008-P-0052, 2010-Ohio-4940, for the proposition that the trial court's failure to have instructed the jury concerning Aggravated Assault requires the reversal of his Felony Murder conviction. *Warner* is similar to this case in that the defendant in that case was charged with both Purposeful Murder and Felony Murder (based on Felonious Assault), and the trial court gave Voluntary Manslaughter instructions as to both Murder counts. As in the case before us, *Warner* involved a stabbing death.

[*P35] But there are important differences between *Warner* and the case before us. One difference is that in *Warner*, unlike in this case, the error was preserved for appellate review, requiring only ordinary prejudice for reversal. Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Boyd*, 110 Ohio App.3d 13, 17, 673 N.E.2d 607 (2d Dist.1996), quoting from *State v. Long*, 3 Ohio St. 3d 12, 3 Ohio B. 360, 444 N.E.2d 1332 (1978), syllabus.

[*P36] Another important difference between *Warner* and this case is that in *Warner* the jury found the defendant guilty of Voluntary Manslaughter as to the count charging Purposeful Murder, but guilty of Felony Murder.[FN 1 The court concluded that the inconsistency in the jury's verdicts was not itself a basis for reversal, because the inconsistency involved different counts. *Warner*, ¶ 71.] To have found the defendant in that case guilty of Voluntary Manslaughter on the Purposeful Murder count, the jury necessarily must have found that the defendant acted under the influence of a sudden passion or in a fit of sudden rage, etc., rendering plausible the conclusion that the incorrect instruction concerning the Felony Murder count affected the jury's verdict as to that count.

*State v. Waller, supra.*

The Magistrate Judge concludes this sub-claim was procedurally defaulted when trial counsel failed to object during the instructions conference. *Waller*, 2014-Ohio-237, at ¶ 33.

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state

> procedural rule, federal habeas review of the claims is barred
> unless the prisoner can demonstrate cause of the default and actual
> prejudice as a result of the alleged violation of federal law; or
> demonstrate that failure to consider the claims will result in a
> fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000).  That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982).  Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.  *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986);  *Engle*, 456 U.S. at 110;  *Wainwright*, 433 U.S. at 87.  *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia*, 372 U.S. 391 (1963).  *Coleman*, 501 U.S. at 724.

The Sixth Circuit Court of Appeals requires a four-part analysis regarding whether a habeas claim is precluded by procedural default. *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule
> that is applicable to the petitioner's claim and that the petitioner
> failed to comply with the rule.
> . . . .
>
> Second, the court must decide whether the state courts actually
> enforced the state procedural sanction, citing *County Court of
> Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60
> L.Ed.2d 777 (1979).

13

> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin*, 785 F.2d at 138; accord, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).

Ohio's contemporaneous objection rule — that parties must preserve errors for appeal by calling them to the attention of the trial court at a time when the error could have been avoided or corrected, as set forth in *State v. Glaros*, 170 Ohio St. 471 (1960), paragraph one of the syllabus; *see also State v. Mason*, 82 Ohio St. 3d 144, 162 (1998) — is an adequate and independent state ground of decision. *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir.  2012), *citing Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010); *Nields v.  Bradshaw*, 482 F.3d 442 (6th Cir.  2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005);  *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing  Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982).  *See also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000).  Reservation of authority to review in exceptional circumstances for plain error is not sufficient to constitute application of federal law. *Cooey v. Coyle,* 289 F.3d 882, 897 (6th Cir. 2002); *Scott*, 209 F.3d 854.  An Ohio state appellate court's review for plain error is enforcement, not waiver, of a procedural default. *Wogenstahl*, 668 F.3d at 337; *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v.*

*Bagley*, 422 F.3d 379, 387 (6th Cir. 2005);, 271 F.3d 239, *citing Seymour*, 224 F.3d at 557(plain error review does not constitute a waiver of procedural default); *accord, Mason,* 320 F.3d 604.

As to the aggravated assault instruction, the Second District clearly enforced the contemporaneous objection rule by reviewing this claim only for plain error and finding that none existed. Waller's claim about the absence of an aggravated assault instruction is therefore barred by procedural default.

**Castle Doctrine Instruction**

Waller also claims the trial court erred in refusing to instruct on the "Castle Doctrine." This claim was also raised on direct appeal and decided by the Second District as follows:

> **[\*P39]** In denying Waller's request for a jury instruction on self-defense, the trial court determined that the Castle doctrine is not applicable, so that Waller had a duty to retreat from the confrontation, if possible, before using deadly force. Waller contends that the trial court erred in determining that the Castle doctrine is not applicable in this case.

> **[\*P40]** The Castle doctrine takes its name from the maxim that a man's home is "his castle." *State v. Comer*, 4th Dist. Gallia No. 10CA15, 2012-Ohio-2261, ¶ 11, citing 4 Blackstone, Commentaries on the Laws of England (Rev. Ed.1979) 223, Chapter 16. The Castle doctrine is now codified in R.C. 2901.09(B):

>> For purposes of any section of the Revised Code that sets forth a criminal offense, a person who lawfully is in that person's residence has no duty to retreat before using force in self-defense, defense of another, or defense of that person's residence, and a person who lawfully is an occupant of that person's vehicle or who lawfully is an occupant in a vehicle owned by an immediate family member of the person has no duty to retreat before using force in self-defense or defense of another.

[*P41]  "Residence," for purposes of R.C. 2901.09, is defined in R.C. 2901.05. R.C. 2901.09(A). R.C. 2901.05(D)(3) defines "residence" as "a dwelling in which a person resides either temporarily or permanently or is visiting as a guest." Before the enactment of what is now R.C. 2901.05(D)(3) in 2008, we held that a defendant claiming the benefit of the Castle doctrine — that is, that he has no duty to retreat in his own home — "must inhabit, even if temporarily, the dwelling itself." *State v. Taylor*, 2d Dist. Miami No. 95-CA-25, 1996 Ohio App. LEXIS 4255, 1996 WL 562796, *6 (Sept. 27, 1996);  cited approvingly in *In re D.N.*, 195 Ohio App.3d 552, 2011-Ohio-5494, 960 N.E.2d 1063 (8th Dist.), at ¶ 19, a case decided after the enactment of the definition of "residence" in R.C. 2901.05(D)(3).

[*P42]  Query whether the driveway upon which Waller fatally stabbed Argabright can qualify as a "residence" for purposes of R.C. 2901.09. "Residence" is defined in R.C. 2901.05(D)(3) in terms of a "dwelling," and "dwelling" is defined in R.C. 2901.05(D)(2):

> "Dwelling" means a building or conveyance of any kind that has a roof over it and that is designed to be occupied by people lodging in the building or conveyance at night, regardless of whether the building or conveyance is temporary or permanent or is mobile or immobile. As used in this division, a building or conveyance includes, but is not limited to, an attached porch, and a building or conveyance with a roof over it includes, but is not limited to, a tent.

[*P43]  For purposes of this appeal, we will assume, without deciding, that the driveway at 154 Kewbury was part of the residence for purposes of R.C. 2901.09.

[*P44]  Waller cites *State v. Barnette*, 12th Dist. Butler No. CA2012-05-099, 2013-Ohio-990, for the proposition that it is implied in that case "that ownership of the residence is critical for determining whether the Castle Doctrine applies." In that case, the defendant went to the victim's apartment to collect "drug money" the victim owed him; following some discussion, the defendant shot and killed the victim. *Id.* at ¶ 2. The defendant in that case argued that it was plain error not to instruct the jury that he had no duty to retreat. *Id.* at ¶ 53. The court of appeals noted that the trial court had, in fact, instructed the jury that "[a] person who lawfully

is in his residence has no duty to retreat before using force in self-defense or defense of his residence." *Id*. at ¶ 56. The court of appeals then noted that: "The mere fact that one is lawfully inside the residence of another does not invoke the strictures of the castle doctrine. * * * . Rather, to invoke the castle doctrine in this case, appellant must have been the lawful occupant or resident of the Fairfield Residence." *Id*. at ¶ 57.

 [*P45]  We find nothing in *Barnette* to support the proposition that a defendant's mere ownership of a residential dwelling, without either presently residing in the dwelling temporarily or permanently, or visiting it as a guest, vitiates the defendant's duty to retreat before using deadly force.

 [*P46]  Waller also cites *State v. Lewis*, 2012-Ohio-3684, 976 N.E.2d 258 (8th Dist.). In that case, a conviction was reversed because of a failure to correctly instruct the jury concerning the Castle doctrine. But the defendant in that case committed the murder in his own home, in which he was then residing. *Id*. at ¶ 3-7. Similarly, in *State v. Kozlosky*, 195 Ohio App.3d 343, 2011-Ohio-4814, 959 N.E.2d 1097 (8th Dist.), another case Waller cites, the defendant committed the murder in the home in which he then resided. *Id*. at ¶ 4, 11.

 [*P47]  In the case before us, the evidence, including Waller's own testimony, establishes that he ceased using 154 Kewbury as his residence, even temporarily, when he went to live with Doss Smith, and agreed to allow Argabright to use 154 Kewbury as Argabright's residence. It is also clear from the evidence in the record, including Waller's own testimony, that Waller was not visiting 154 Kewbury as a guest when he went there for his fatal confrontation with Argabright. By Waller's own testimony, Argabright had made it clear that Waller was not welcome at the residence.

 [*P48]  We agree with the trial court that the Castle doctrine is inapplicable to the case before us.

*State v. Waller, supra*.

The Warden argues that this claim is not cognizable in habeas corpus because the applicability of the "castle doctrine" is a question of state law, not federal constitutional law. Waller does not address this claim in his Reply.

Federal habeas corpus is available only to correct federal constitutional violations.  28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982); *Barclay v. Florida,* 463 U.S. 939 (1983).  "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Alleged errors in jury instructions normally do not rise to the level of federal constitutional violations. See *Engle v. Isaac*, 456 U.S. 107 (1982); *Turoso v. Cleveland Municipal Court*, 674 F.2d 486 (6th Cir. 1982); *Eberhardt v. Bordenkircher*, 605 F.2d 275 (6th Cir. 1979); *Weston v. Rose,* 527 F.2d 524 (6th Cir. 1975). When the evidence presented does not support a requested jury instruction and that determination is based upon a state court's interpretation and application of state law, an asserted error relating to the jury instruction is not cognizable in federal habeas corpus unless the failure amounted to a fundamental miscarriage of justice. *See Bagby v. Sowders*, 894 F.2d 792, 795 (6th Cir. 1990).

The Magistrate Judge concludes Waller's sub-claim relating to the Castle Doctrine is not cognizable in federal habeas corpus.

**Self Defense Instruction**

Waller claims that he was entitled to a self-defense instruction.  The Second District denied relief on this claim, holding:

> [**\*P49**]  To establish self-defense to a charge of murder, a
> defendant must show that he was not at fault in creating the

18

situation giving rise to the affray, that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from that danger was in the use of deadly force, and that the defendant did not violate any duty to retreat. *State v. Jackson*, 22 Ohio St.3d 281, 283, 22 Ohio B. 452, 490 N.E.2d 893 (1986).

[*P50]  In the case before us, it requires a stretch to find that Waller was not at fault in creating the situation giving rise to the affray, since, by his own admission, he took the first swing, even though he claimed that he failed to connect. But even if a reasonable jury might find for Waller on that issue, no reasonable jury could find that his only means of escape was in the use of deadly force and that he did not violate his duty to retreat. Waller's own testimony establishes that he had opportunities to retreat, but failed to avail himself of them. According to Waller, Argabright threatened to kill him even before Argabright picked up a rock. Waller testified that after he pulled the knife, Argabright, armed with the rock, "started backing up towards the glass of the back window of the Blazer," (not Waller's vehicle) which was in the driveway. Instead of retreating, Waller "got angry and * * * took the end of my knife and went forward towards him and * * * hit the back of the windshield." At a slightly later point, according to Waller, Argabright went to the front of the Blazer, while Waller circled back. Again, instead of retreating, Waller "came forward."

[*P51]  We conclude that the trial court did not abuse its discretion in denying Waller's request for an instruction on self-defense.

*State v. Waller, supra*.

The Warden argues that the Second District's decision of this claim is based entirely on state law and the facts as found by that court (Return, ECF No. 18, PageID 1387).  Waller makes no response in his Reply.

The Magistrate Judge finds the Warden's position well taken.  The Sixth Circuit has held that the right to assert self-defense is a fundamental right.  *Taylor v. Withrow,* 288 F.3d 846 (6th Cir. 2002).  However, whether the facts of the case warrant a jury instruction on self-defense remains a question for the state courts.  *Id.*  The Second District's findings of fact on the defense

of self-defense are entitled to deference unless Waller shows they are erroneous by clear and convincing evidence. 28 U.S.C. § 2254(e). He has not made an attempt to do so.

**Reckless Homicide Instruction**

Finally, Waller claims he was entitled to an instruction on the offense of reckless homicide. The Second District's decision on this claim is as follows:

> [**\*P52**] Waller requested an instruction concerning Reckless Homicide. That offense is proscribed by R.C. 2903.041(A): "No person shall recklessly cause the death of another * * * ."

> [**\*P53**] The culpable mental states of "knowingly" and "recklessly" are set forth in R.C. 2901.22(B) and (C):

> (B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.

> (C) A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.

> [**\*P54**] The trial court, in rejecting Waller's request for an instruction on Reckless Homicide, ruled:

> > As to the instructions on reckless homicide, I heard the arguments as to how the jury could find reckless intent — or reckless mens rea. The evidence that through the testimony of various witnesses, including the Defendant, would not indicate a reckless mens rea in this case but one of at least knowingly. The jury could find purposely. That would be a jury decision, but at least knowingly. Under the facts that have been presented, the testimony of all the

witnesses, including the Defendant, the Court finds that reckless homicide is not a proper instruction.

[*P55] We agree with the trial court. By his own admission, Waller did not merely act with heedless indifference to the consequences, perversely disregarding a known risk that by stabbing Argabright in the chest with the knife he would cause serious injury; he was aware that by stabbing Argabright he would be causing serious physical harm. By Waller's own admission, the stabbing was not an accident — he meant to stab Argabright. No reasonable jury could find, on this evidence, that Waller did not know that by stabbing Argabright in the chest with a ten-to-twelve-inch knife blade he would be causing Argabright serious physical harm.

*State v. Waller, supra.*

The Warden asserts this claim is not cognizable in federal habeas corpus because the Supreme Court has never held as a matter of constitutional right that a state defendant in a non-capital case is entitled to a jury instruction on a lesser-included offense (Return, ECF No. 18, PageID 1385, citing *McMullan v. Booker*, 761 F.3d 662, 667 (6th Cir. 2014), and *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990)).  Waller makes no response in his Reply.  The Warden's position is well taken as a matter of law.  Moreover, the Second District found that the instruction would not have been warranted by the facts as that court found them and Waller has not shown that fact finding is clearly erroneous.

Waller's First Ground for Relief should be dismissed with prejudice.

**Ground Two:  Structural Error in the Indictment**

In his Second Ground for Relief, Waller claims the Indictment in this case failed to include all the elements required for felony murder.

The Warden defends on the basis that this claim is not a constitutional claim and

therefore not cognizable in federal habeas corpus (Return, ECF No. 18, PageID 1388).  The Warden also asserts this claim is procedurally defaulted because it was not included in Waller's appeal to the Ohio Supreme Court. *Id.*  at PageID 1389.

Waller makes no response to the Warden's first assertion.  In response to the second, he admits the claim was omitted from the Ohio Supreme Court appeal, but blames that on ineffective assistance of appellate counsel of his appellate lawyer (Reply, ECF No. 21, PageID 1416).

Waller raised this claim as his second assignment of error on direct appeal and the Second District decided it as follows:

> **[*P57]**  Waller's Second Assignment of Error is as  follows:
>
> THE DENIAL OF WALLER'S MOTION TO DISMISS THE INDICTMENT WAS AN ERROR BECAUSE THE INDICTMENT CONTAINED STRUCTURAL ERRORS WHICH WERE NOT REMEDIED BY THE BILL OF PARTICULARS.
>
> **[*P58]**  In this assignment of error, Waller challenges the sufficiency of that part of the indictment, Count Two, charging him with Felony Murder. Waller concedes that an indictment tracking the wording of the Felony Murder statute, R.C. 2903.02(B), does not need to specify the underlying felony upon which the charge is based, as long as the underlying offense is identified in a bill of particulars, citing *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215. He contends that the underlying felony in his case was not sufficiently identified, because of a discrepancy between the initial bill of particulars, which he contends alleged the underlying felony to be Felonious Assault by causing or attempting to cause physical harm by means of a deadly weapon — R.C. 2903.11(A)(2) — and the amended bill of particulars, which alleged the underlying felony to be Felonious Assault by causing serious physical harm — R.C. 2903.11(A)(1).
>
> **[*P59]**  Count Two of the indictment specified Felonious Assault as the felony upon which the charge of Felony Murder was based, but did not further identify the factual basis for the alleged Felonious Assault. Count Two also had an attached firearm specification.

[*P60] The initial bill of particulars, filed September 18, 2012, set forth the following in relation to Count Two of the indictment:

> Count II: On April 9, 2012 and in the driveway of 154 Kewbury Road, Springfield, Clark County, Ohio Jason Waller stabbed Donald Argabright in the chest and Donald Argabright died as a result of the stabbing. Jason Waller in doing so had on his person or under his control a firearm while committing the offense.

[*P61] Significantly, the second sentence set forth above was identically set forth in that part of the initial bill of particulars pertaining to Count One of the indictment. Each sentence appears to have been intended to identify the basis for the firearm specification attached to the particular count in the indictment to which it pertained.

[*P62] The "Amended Bill of Particulars," filed October 17, 2012, states, in its entirety, as follows:

> As to Count II and in addition to the Indictment:

> On April 9, 2012 and in the driveway of 154 Kewbury Road, Springfield, Clark County, Ohio Jason Waller knowingly caused serious physical harm to Donald Argabright by stabbing him in the chest with either a sword or knife piercing his heart, lung, and aorta, a violation of R.C. 2903.11(A)(1), Felonious Assault, an offense of violence that is a felony of the second degree. Jason Waller caused the death of Donald Argabright as a proximate result of Jason Waller committing or attempting to commit that Felonious Assault.

> Counts I, III, and IV remain as stated and filed on September 18, 2012.

[*P63] It seems to us that as to Count Two of the indictment, the Amended Bill of Particulars was intended to supersede the bill of particulars filed a month earlier, but even if that is not the case, we see no basis for confusion. The reference in the first bill of particulars to Waller's having had a firearm on his person appears to have identified the factual basis for the firearm specification, not the type of Felonious Assault alleged to have proximately

caused Argabright's death. In each bill of particulars, the factual basis for the Felonious Assault is clearly identified as Waller's having stabbed Argabright in the chest with the bladed weapon that was variously referred to at trial as a sword or a knife. In our view, this was sufficient to identify the factual basis for the felony underlying the Felony Murder count of the indictment.

[*P64]  Waller's Second Assignment of Error is overruled.

*State v. Waller, supra.*

The right to indictment by grand jury in the Fifth Amendment to the United States Constitution is one of the few remaining provisions of the Bill of Rights that has not been declared applicable to the States.  In other words, there is no federal constitutional right to grand jury indictment for a state criminal offense. *Hurtado v. California*, 110 U.S. 516 (1884); *Branzburg v. Hayes,* 408 U.S. 665, 687-88 n. 25 (1972); *Gerstein v. Pugh,* 420 U.S. 103 (1975). Waller apparently did not argue this claim as a federal constitutional claim on direct appeal, and the Court agrees with the Warden that no federal claim is stated in Ground Two.

The Magistrate Judge also agrees that this claim is procedurally defaulted by failure to include it on appeal to the Ohio Supreme Court.  Waller asserts this failure is excused by the ineffective assistance of his appellate counsel.  However, the Sixth Amendment guarantee of effective assistance only applies to appeals of right and appellate review by the Ohio Supreme Court is discretionary.  Had Waller been unable to retain counsel, he would not have been entitled to appointed counsel in the Ohio Supreme Court.  The right to appointed counsel extends to the first appeal of right and no further.  *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Ross v. Moffitt,* 417 U.S. 600 (1974).  Ineffective assistance of counsel can excuse procedural default only when it occurs in a proceeding where a defendant is constitutionally entitled to counsel under the Sixth Amendment.  *Wainwright v. Torna*, 455 U.S. 586 (1982)(where there is

no constitutional right to counsel there can be no deprivation of effective counsel); *Riggins v. Turner*, 1997 U.S. App. LEXIS 6115, *5 (6th Cir. 1997); *Barkley v. Konteh*, 240 F. Supp. 2d 708, 714 (N.D. Ohio 2002).

Waller's Second Ground for Relief should be dismissed with prejudice.


**Ground Three: Prosecutorial Misconduct**


In his Third Ground for Relief, Waller asserts prosecutorial misconduct so tainted the proceedings as to deny him a fair trial.

This claim was raised on appeal as Waller's third assignment of error and the Second District decided it as follows:

> **[*P65]** Waller's Third Assignment of Error is as follows:
>
> THE PROSECUTOR ENGAGED IN MISCONDUCT THROUGHOUT THE ENTIRE TRIAL, TAINTING THE WHOLE PROCEEDINGS, DEPRIVING APPELLANT OF A FAIR TRIAL.
>
> **[*P66]** The test for reversible prosecutorial misconduct is whether the prosecutor's remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused. *State v. Jones*, 90 Ohio St.3d 403, 420, 2000 Ohio 187, 739 N.E.2d 300 (2000). The touchstone of analysis is the fairness of the trial, not the culpability of the prosecutor. *Id.*
>
> **[*P67]** Waller first cites the following colloquy during cross-examination:
>
> Q. Mr. Waller, would you agree that you pretty much have an answer for everything here this morning?
>
> A. No, sir, I don't.
>
> Q. You mentioned you had the discovery packet, didn't you?

A. Yes, sir, I did.

Q. What is a discovery packet?

A. I'm not sure. I just received it from the lawyer.

Q. Yeah, had the statements of every witness, didn't it?

A. Yes, I guess it did.

Q. And you read those statements, didn't you?

A. Yes. I didn't have all the discovery packet though.

Q. It helped you decide how your questions were gonna be this morning, didn't it?

A. No, sir.

 [*P68]  As the State noted, Waller had alluded to his having received the discovery packet on direct examination, when he was asked whether he knew that the Derringer pistol had fallen out of his pocket during his confrontation with Argabright. There was no objection to the line of questioning quoted above. The State did not address this subject in its closing arguments.

 [*P69]  We conclude that it was not improper for the State to have elicited from Waller that he had access to a discovery packet containing witness statements in advance of his testimony. Even if it were not proper for the State to have done so, we find nothing in this line of questioning that implicates the fairness of the trial.

 [*P70]  Waller next cites the following exchange during his cross-examination:

Q. Where were the tears before we broke? You didn't shed any tears.

MR. RION [representing Waller]: Objection. That's not true.

MR. MERRELL [representing the State]: It is true.

THE COURT: Counsel, you're being argumentative with the witness.

26

MR. MERRELL: Well, I can't help it, Judge. I'll try not to, though.

THE COURT: You will not be argumentative with the witness.

[*P71]  The prosecutor then moved on, and did not return to this subject again. We find nothing in this exchange that would vitiate the fairness of the trial. Waller's objection was sustained, and the prosecutor was admonished. Counsel disagreed in front of the jury whether Waller had shed tears at a previous point during the trial, and the jury could reach its own conclusion in that regard, to the extent that it might aid the jury in evaluating Waller's testimony.

[*P72]  Waller next cites the following exchange during his cross-examination:

Q. Carrying a Bible in and out of the courtroom and having it on the table in front of you, are you trying to sway this jury in any way                                                                    —

MR. RION: Objection.

THE COURT: Sustained. Jury will disregard the question.

[*P73]  The prosecutor moved on to another subject, and did not again refer to Waller's Bible, either in questioning or in argument. Neither in connection with this exchange, nor at any other time during the trial, did Waller seek a mistrial. We presume that the jury followed the trial court's instruction to disregard this question.

[*P74]  The next exchange cited by Waller occurred immediately after a recess for lunch:

Q. Let's go over a couple of exhibits. Did you see pictures of the Samsung phone that we showed in court?

A.  No, sir.

Q. You weren't paying attention to what was on the screen or what?

MR. RION: Objection.

THE COURT: Sustained. Jury will disregard the question.

BY MR. MERRELL:

27

Q. Exhibit 8-A, can you identify that?

A. Yes, it's my cell phone.

Q. Okay. That's what I'm asking.


 [*P75]  This ill-advised criticism of the witness served no apparent purpose, and was immediately the subject of an objection that was sustained. The prosecutor made no subsequent reference to his suggestion that Waller was not paying attention. We find no likelihood that this exchange affected the outcome of the trial.

 [*P76]  Next, Waller cites the following exchange, at the conclusion of his testimony:

Q. And you described to this jury how upset you were. Correct?

A. Yeah.

Q. And how scared you were.

A. Correct.

Q. What other words did you use? Were you provoked?

A. Fearful, I was scared. I didn't mean for this to happen at all. I didn't mean to kill Donald.

Q. Well, that's not my question. My question is how did you think to pick up the pill bottles?

A. How did I think?

Q. Yeah.

A. I don't know.

Q. If you have all those emotions running rampant in your head, how did you suddenly think I'm gonna pick up my pill bottles?

A. Each one has different emotions at any given time.

Q. I guess the pill bottles were more important to you in your health than helping Donald who had been stabbed severely.

MR. RION: Objection.

THE COURT: Sustained.

MR. MERRELL: No other questions.

THE COURT: Jury will disregard the last remark.

[*P77]  Waller's mental state was an issue for the jury to consider, so the fact that he had had the presence of mind to pick up his VA medications after stabbing Argabright and before fleeing the scene was a legitimate point for the State to have elicited. The prosecutor's final remark was an argument, not a question, and Waller's objection was properly sustained. But the factual point had already been made for the jury to consider. We see no likelihood that the prosecutor's argumentative remark deprived Waller of a fair trial.

[*P78]  Waller next turns his attention to remarks made by the prosecutor during closing arguments. He first cites the prosecutor's initial remarks in rebuttal argument:

> Quite frankly, I'm dumbfounded with that argument. I don't know how to respond to it. He did not concede one thing. He didn't even concede the tampering charge. He said Jason Waller, he must not have known there was an official proceeding, yet he knew he stabbed him in the heart. He had to know the value of that weapon. He doesn't even concede that to you folks. He doesn't concede one thing.

[*P79]  There is nothing improper in arguing to a jury that aspects of the adverse party's argument are unreasonable. Because this was argument, the prosecutor was entitled to his rhetorical flourish that he was "dumbfounded" by Waller's argument.

[*P80]  Waller next addresses a part of the State's initial closing argument:

> Jason Waller owned the property at 154 Kewbury, and it was in foreclosure. He allowed Donald Argabright, Stacy Young, and her children, * * * to live in the Kewbury house when he went to live with Doss Smith. He didn't

29

know how long it would be before the bank made them leave. He had given them possession and, under the law as tenants, they had certain rights.

MR. RION: Objection.

THE COURT: Overruled. Continue, please.

> MR. CAREY [representing the State]: Then Jason was told to leave the home of Doss Smith. He had to live in either a small apartment or a motel room. He grew increasingly unhappy about the fact that Donald Argabright was living in the house on Kewbury. But Jason didn't have them sign a lease. So legally, they had a month-to-month tenancy.

MR. RION: Objection.

THE COURT: Sustained.

MR. CAREY: He had to give —

THE COURT: None of that is before — there's no evidence about those issues before the jury of the tenancy or landlord tenant. You will refrain from commenting about the landlord/tenant issues and rights.

MR. CAREY: He did have to give them a three-day notice to vacate.

MR. RION: Objection.

MR. CAREY: Your Honor, this was covered.

THE COURT: That was before the Court. Objection overruled.

 [*P81]  We see no error in the trial court's rulings in the above-quoted colloquy. From the testimony, including Waller's testimony, it is clear that he granted to Argabright and his family the exclusive right to reside at 154 Kewbury while Waller went off to live with Doss Smith. Argabright was, in fact, given the right to live there by Waller. And although the general scope of landlord-tenant law was not before the court, Waller's own testimony established that he was familiar with the requirement of a three-day notice before he could evict Argabright from his property.

 **[\*P82]**  Finally, Waller cites the following exchange during the State's rebuttal argument:

You heard her [Stacy Young, Argabright's girlfriend] on the 9-1-1 call. We always tell the truth under stress like that. She said Jason Waller stabbed him. Where's the corroboration of what this man says? Julie Ferryman, his wife, supposedly heard some of this. Did she testify today? Huh-uh. Wonder why?

MR. RION: Objection.

THE COURT: Sustained.

 **[\*P83]**  Waller seems to be arguing that he had a right to prevent his wife from testifying, and that by commenting on his exercise of that right, the State violated his constitutional rights. But the spousal privilege is statutory — R.C. 2945.42, not constitutional, and contains an exception where: "the communication was made or act done in the known presence or hearing of a third person competent to be a witness." It appears from the evidence in the record that the only testimony that Waller's wife could have given to corroborate his testimony would have concerned his telephone conversations with Argabright in the days preceding the confrontation; she was not present when the confrontation and stabbing occurred. Therefore, since she would have been testifying concerning a conversation in the known hearing of a third person, the statutory privilege would not have applied.

 **[\*P84]**  In any event, the spousal privilege is statutory, not constitutional. We are aware of no authority for the proposition that the State may not comment concerning a spouse's failure to be called by the other spouse to testify in a proceeding in which that spouse is a defendant, and Waller has not cited any authority for that proposition.

 **[\*P85]**  Finally, because Waller's wife was not present during the confrontation and stabbing, the State's comment concerning her failure to testify, an objection to which was promptly sustained, was not likely to have had any impact on the outcome of the trial.

 **[\*P86]**  In short, we find no prosecutorial misconduct rising to the level of reversible error. Even if Waller had moved for a mistrial based upon prosecutorial misconduct, he would not have been entitled to a mistrial upon that ground. Waller's Third Assignment of Error is overruled.

*State v. Waller, supra.*

The Warden defends this Third Ground for Relief on the merits, asserting that the Second District's decision is not an objectively unreasonable application of controlling Supreme Court precedent, particularly *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)(Return, ECF No. 18, PageID 1395-97.)  Waller makes no argument on Ground Three in his Reply.

The current standard for evaluating claims of prosecutorial misconduct in the Sixth Circuit is:

> The relevant question in analyzing a claim for prosecutorial misconduct on habeas review is "whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986) (internal quotation marks omitted). To satisfy this standard, the conduct must be both improper and flagrant. *Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir. 2006); *see also Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (noting that reversal is required if the prosecutor's misconduct is "so pronounced and persistent that it permeates the entire atmosphere of the trial or so gross as probably to prejudice the defendant") (internal citation omitted). If conduct is found to be improper, four factors are then considered to determine whether the conduct was flagrant and therefore warrants reversal: "(1) the likelihood that the remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) the total strength of the evidence against the defendant." *Bates v. Bell*, 402 F.3d 635, 641 (6th Cir. 2005).

*Johnson v. Bell*, 525 F.3d 466, 482 (6th Cir. 2008).  Applying that standard, the Magistrate Judge concludes the Second District's decision is not an objectively unreasonable application of relevant Supreme Court precedent.  Ground Three should be dismissed with prejudice.

**Ground Four:  Ineffective Assistance of Trial Counsel (Insufficient Time)**

In his Fourth Ground for Relief, Waller claims he received ineffective assistance of trial counsel because his attorney did not spend sufficient time with him in preparation for trial.

The Warden asserts this claim was never presented to the state courts and is therefore unexhausted (Return, ECF No. 18, PageID 1371-74). The Warden, however, suggests no Ohio procedural vehicle by which Waller could now raise this claim. A claim which was never raised in the state courts but could not now be raised is procedurally defaulted.

"A claim may become procedurally defaulted in two ways." *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013), *quoting Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). First, a claim is procedurally defaulted where state-court remedies have been exhausted within the meaning of § 2254, but where the last reasoned state-court judgment declines to reach the merits because of a petitioner's failure to comply with a state procedural rule. *Id*. Second, a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule. *Id*.

Waller responds by noting that ineffective assistance of trial counsel claims not raised on direct appeal are not defaulted if a defendant has the same counsel on appeal as at trial, which is what happened here (Reply, ECF No. 21, PageID 1417, *citing Buell v. Mitchell,* 274 F.3d 337 (6th Cir. 2001)). Waller makes that argument in response to the Warden's procedural defenses to Grounds Four through Eight, but it is inapplicable to Ground Four which could not have been raised on direct appeal because it depends on facts outside the record.

In Ohio constitutional claims based on matter outside the record must be raised in a petition for post-conviction relief under Ohio Revised Code § 2953.21. Waller filed such a

petition, but no claim like Ground Four was made in that pleading (Petition, State Court Record, ECF No. 17, PageID 355 et seq.; Supplemental Petition, *Id.* at PageID 413, et seq.)

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S. 111 (2009).With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694.  *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987).  *See generally* Annotation, 26 ALR Fed 218.

If the Court were to reach the merits of Ground Four, it would find Waller has not shown any deficient performance under the *Strickland* standard.  Simply put, there is no mandatory minimum number of hours of actual client contact an attorney must have to perform professionally in a criminal case.  Ground Four should be dismissed with prejudice.


**Ground Five:  Ineffective Assistance of Trial Counsel (Character Witnesses)**


In his Fifth Ground for Relief, Waller asserts his trial attorney provided ineffective assistance of trial counsel because he never asked Waller if he had any character witnesses – people who could testify to his character for peacefulness.

This Ground for Relief is in the same posture as Ground Four.  That is, it was not made in the petition and supplemental petition for post-conviction relief and is therefore procedurally defaulted.

Ground Five should be dismissed with prejudice.

**Ground Six:  Ineffective Assistance of Trial Counsel:  Stipulation to Motion *in Limine***

In his Sixth Ground for Relief, Waller asserts his trial attorney provided ineffective assistance of trial counsel when he stipulated to the State's motion *in limine* not to allow the decedent's violent past to be brought up.

As the Warden points out, Ohio law required the trial judge to exclude past violent acts of the decedent when offered to show a propensity to violence (Return, ECF No. 18, PageID 1373). Waller cites no law in his Reply to show this is not the law in Ohio.  It cannot be ineffective assistance of trial counsel to agree to a motion that the judge is bound to grant in any event. Ohio law does permit testimony about a decedent's reputation in this regard and such a witness was presented.

Ground Six should be dismissed with prejudice.


**Ground Seven:   Ineffective Assistance of Counsel (Failure to Challenge State's Key Witnesses)**

In his Seventh Ground for Relief, Waller claims his trial attorney provided ineffective assistance of trial counsel when he failed to effectively cross-examine key state witnesses on inconsistent statements and "fabrication of evidence."

Here, again, is a claim procedurally defaulted because it was not raised in post-conviction.  In fact, it is not developed at all in either the Petition or the Reply, so that this Court is not told what inconsistent statements were not used in cross and what evidence was allegedly fabricated.

Ground Seven should be dismissed with prejudice.

**Ground Eight: Ineffective Assistance of Counsel (Failure to Develop Defense of Self-Defense)**

In his Eighth Ground for Relief, Waller alleges he received ineffective assistance of trial counsel when his attorney failed to adequately develop his defense of self-defense. Once again, this is a claim not made in the post-conviction petition, to the extent it relies on evidence, not revealed to this Court, that was not on the record. On the merits of the underlying self-defense claim, the Second District's decision, as outlined above, is not an objectively unreasonable application of Supreme Court precedent.

Ground Eight should be dismissed with prejudice.

**Ground Nine: Ineffective Assistance of Counsel (Failure to Object to Omission of Predicate Offense of Aggravated Assault)**

In his Ninth Ground for Relief, Waller complains that his attorney did not object to omission of an instruction on aggravated assault as the predicate offense for voluntary manslaughter.

Waller makes it clear in his Reply that this is a claim of ineffective assistance of appellate counsel rather than a claim of ineffective assistance of trial counsel (Reply, ECF No. 21, PageID 1419-20). He asserts the claim is not procedurally defaulted because it was properly presented as part of his Application to Reopen under Ohio R. App. P. 26(B). *Id.*

The Warden was understandably confused by the phrasing of Ground Nine which reads

as if it were an ineffective assistance of trial counsel claim – failure to object to the instructions – rather than an ineffective assistance of appellate counsel claim – failure to raise as an assignment of error trial counsel's failure to object. Nevertheless, when it is construed as an ineffective assistance of appellate counsel claim, the Warden does not plead procedural default and the Court agrees that the ineffective assistance of appellate counsel claim is preserved for merit review here.

This claim was raised as omitted assignment of error two in the 26(B) Application (State Court Record, ECF No. 17, PageID 442-46). The Second District rejected this claim on the merits. *State v. Waller*, Case No. 2013-CA-26 (2nd Dist. June 4, 2014)(unreported; copy at State Court Record, ECF No. 17, PageID 466, et seq.). It held:

> Waller's Second Proposed Assignment of Error is as follows:
>
> THE DEFENDANT-APPELLANT'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WERE VIOLATED BY INEFFECTIVE ASSISTANCE OF COUNSEL, WHERE COUNSEL FAILED TO OBJECT TO THE JURY INSTRUCTIONS AS TO THE FELONY MURDER COUNT, CONCERNING THE LESSER OFFENSE OF VOLUNTARY MANSLAUGHTER.
>
> In our opinion in this appeal, we concluded that the trial court did, indeed, err in failing to instruct the jury on the lesser offense of Aggravated Assault, and by extension, Involuntary Manslaughter, but that this error was not preserved for appellate review, and did not, under the circumstances of this case, rise to the level of plain error. *Id*., ¶30-38. We ended our analysis on this point by concluding "that this is not the exceptional case where notice of a plain error must be taken to avoid a manifest miscarriage of justice." *Id*., ¶38.
>
> Waller was charged with both the purposeful murder of Argabright, and the felony murder of Argabright. He was acquitted of purposeful murder. As to both murder counts, the jury was instructed, without objection, that if it should find that the State had proven all the elements of the offense, but that Waller had proven by the greater weight of the evidence that he knowingly

acted while under the influence of sudden passion or in a sudden fit of rage, either of which was brought on by serious provocation occasioned by the victim that was reasonably sufficient to incite Waller into using deadly force, then it must find Waller guilty of Voluntary Manslaughter. *Id.*, ¶31.

The problem is that this was not a correct instruction with respect to the felony murder count, because the finding of provocation, etc., would not have been a basis for felonious assault, the predicate for felony murder, but would have been a basis for aggravated assault, which cannot be a predicate for felony murder, but which can be a predicate for involuntary manslaughter. *Id.*,¶ 32.

The prejudice required for a reversal based upon ineffective assistance of trial counsel, while substantial, is not as great as that required for a reversal based upon plain error, which requires an exceptional case involving a manifest miscarriage of justice. The prejudice required for a reversal based upon ineffective assistance of trial counsel requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), quoted in *State v. Bradley*, 42 Ohio St.3d 136, 142, 583 N.E.2d 373 (1989). "***a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Strickland*, at 693.

In the case before us, if the jury had found the requisite provocation, it would presumably have found Waller guilty of voluntary manslaughter, based upon the erroneous instructions it had been given. *Waller*, ¶38. Had the jury been given the correct instructions, it would have been instructed that it should find Waller guilty of involuntary manslaughter if it found the requisite provocation. We see no reason to believe that the jury would have been more likely to find the necessary provocation if it had been told that the result would have been to reduce Waller's conviction to a greater extent than it was, in fact, told would be the result of finding the same provocation.

We conclude, therefore, that there is not a reasonable probability that the result of the trial would have been otherwise had Waller's trial counsel requested the correct instruction.

*Id.* at PageID 468-70.

As noted above, *Strickland v. Washington* provides the standard for measuring ineffective assistance of trial counsel claims. The *Strickland* test also applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp,* 483 U.S. 776 (1987). To evaluate a claim of ineffective assistance of appellate counsel, then, the court must assess the strength of the claim that counsel failed to raise. *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011), *citing Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id*., *citing Wilson.*

The Second District applied the correct federal standard under *Strickland*. It concluded that the result of the trial would probably not have been different if trial counsel had requested and received the correct instruction. Therefore it was not ineffective assistance of trial counsel to fail to make that request and not ineffective assistance of appellate counsel to fail to raise that claim on appeal. The question before this Court is whether or not that decision was an objectively reasonable application of *Strickland* at the appellate level.

The Warden does not argue the merits of Ground Nine, probably because of the confusion caused by its wording as an ineffective assistance of trial counsel claim. Waller also does not argue the merits of this claim and the Magistrate Judge concludes on the merits that the Second District's decision is not an objectively unreasonable application of *Strickland*. The Second District is, after all, the court which would have had to be persuaded by the omitted assignment of error and was not, based on its having grappled with the underlying trial court error.

Moreover, the Warden claims this Ground for Relief is procedurally defaulted by Waller's failure to appeal to the Ohio Supreme Court from the denial of his 26(B) application

(Return, ECF No. 18, PageID 1376, *citing O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)). Although Waller asserts the claim is not procedurally defaulted, he does not show any appeal to the Ohio Supreme Court on the 26(B) application or any reason why *O'Sullivan* does not apply.

Ground Nine should, therefore, be dismissed with prejudice, both on the merits and as procedurally defaulted.


**Ground Ten:  Ineffective Assistance of Counsel (Failure to File Speedy Trial Motion)**

In his Tenth Ground for Relief, Waller asserts he received ineffective assistance of trial counsel when his trial attorney failed to file a motion to dismiss for denial of Waller's constitutional right to a speedy trial.

As the Warden notes, this claim was never presented to the Ohio courts as an ineffective assistance of trial counsel claim, either on direct appeal or in post-conviction.  Instead, it was first presented as an underlying claim on Waller's First Proposed Assignment of Error in his 26(B) Application.  The Second District decided that claim on the merits as follows:

> Waller's First Proposed Assignment of Error is as follows:
>
> DEFENDANT-APPELLANT'S TRIAL COUNSEL WAS INEFFECTIVE IN THAT TRIAL COUNSEL DID NOT FILE A MOTION TO DISMISS PURSUANT TO OHIO REVISED CODE § 2945.73, BASED ON A VIOLATION OF OHIO REVISED CODE § 2945.71, WHERE THE DEFENDANT WAS NOT TIMELY INDICTED AFTER HIS ARREST.
>
> Waller asserts that he was arrested for the offense of Murder, for which he was later tried and convicted, on April 10, 2012, and that he was not indicted until April 23, 2012, thirteen days later. He argues that this violated his right under R.C. 2945.71 (C)(1) to have been accorded a preliminary hearing within ten consecutive days after his arrest, during which he was held in jail in lieu of bail. Finally, he contends that his appellate counsel was ineffective for

having failed to assign as error that his trial counsel was ineffective for having failed to seek the dismissal of the charges against him.

Waller relies upon RC. 2945.73(A), which provides that a charge of felony shall be dismissed if the accused is not accorded a preliminary hearing within the time required by R.C. 2945.71. But R.C. 2945.73(D) provides that a dismissal under division (A) of the section "has the same effect as a nolle prosequi." In other words, it is a dismissal without prejudice. This is in contrast with a discharge under divisions (B) or (C) of R.C. 2945.73 - for felony or misdemeanor speedy trial violations - which "is a bar to any further criminal proceedings against [the accused] based on the same conduct."

In short, the only relief to which Waller would have been entitled for the fact that he was not accorded a preliminary hearing within ten days following his arrest was the dismissal of the charge and his release from jail. This would not have affected the validity of his indictment thirteen days following his arrest, and is therefore not material to his appeal from his conviction and sentence on that indictment. Therefore, Waller's appellate counsel was not ineffective for having failed to assign this as error.

*State v. Waller*, Case No. 2013-CA-26 (2nd Dist. June 4, 2014)(unreported; copy at State Court Record, ECF No. 17, at PageID 466-68.) In short, the Second District held it was not ineffective assistance of appellate counsel to fail to raise this assignment of error because it would have been without merit.

The Warden's Return evinces the same confusion as with Ground Nine, to wit, that this Ground is pled as an ineffective assistance of trial counsel claim never brought in the state courts (Return, ECF No. 18, PageID 1375).

Waller's Reply shows that he confuses the federal constitutional right to a speedy trial with the Ohio statutory right to a preliminary hearing within ten days of arrest. Waller received a trial well within the one year presumptive federal constitutional limit and thus his constitutional speedy trial right was not violated. As to the Ohio right to preliminary hearing, that is not a constitutional right. In fact, there is no constitutional right to such a hearing, speedy or not, and

in both the Ohio and federal criminal justice systems, no preliminary hearing is held if an indictment is returned.

Waller is also mistaken about the result of failure to hold a speedy preliminary hearing. As the Second District pointed out, that would call for a dismissal and release, but only without prejudice, as with a nolle prosequi.

Ground Ten is without merit and should be dismissed with prejudice.  It is also procedurally defaulted for lack of an appeal to the Ohio Supreme Court.


**Ground Eleven:  Trial Court Refusal to Instruct on Self Defense**


In his Eleventh Ground for Relief, Waller asserts the trial court abused its discretion by failing to instruct on self-defense.

The Warden asserts this claim duplicates part of the First Ground for Relief (Return, ECF No. 18, PageID 1376).  Waller makes no response in his Reply.

Ground Eleven should be dismissed with prejudice for the same reasons given with respect to the relevant part of Ground One.


**Conclusion**


Based on the foregoing analysis, it is respectfully recommended that the Petition be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to

proceed *in forma pauperis*.

July 19, 2016.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).